IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

KRISTEN DUNN                                                                                          PLAINTIFF

V.                                    CASE NO. 5:14-cv-00207-JTK

CAROLYN W. COLVIN, *Acting Commissioner,*                                  DEFENDANT
Social Security Administration

**MEMORANDUM AND ORDER**

Plaintiff Kristen Dunn brings this action for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). After reviewing the administrative record and the arguments of the parties, the Court finds that substantial evidence supports the Commissioner's decision.

**I.     PROCEDURAL HISTORY**

Ms. Dunn protectively filed her applications for DIB and SSI on July 8, 2011, alleging a disability onset date of June 22, 2011.[1] (R. at 155.) She alleged complications from bipolar disorder, borderline personality disorder, inflammatory arthritis, and hypotension. (R. at 159.) The Social Security Administration denied Ms. Dunn's claim at the initial and reconsideration levels. (R. at 15.) On August 13, 2012, an Administrative Law Judge ("ALJ") held a hearing on this matter. (R. at 15.) On September 24, 2012, the ALJ issued an unfavorable decision,

---

[1]"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3).

denying Ms. Dunn's claims. (R. at 33.) On April 24, 2014, the Appeals Council denied her request for review. (R. at 1.)

On May 29, 2015, Ms. Dunn filed a timely complaint against the Commissioner, appealing the ALJ's denial of DIB and SSI. (Pl.'s Compl. 1, ECF No. 2.) On July 7, 2014, the parties consented to a Magistrate Judge having jurisdiction to issue a final judgment in this case. (Consent 1, ECF No. 6.) Both parties have submitted appeals briefs for the Court to consider. (Pl.'s Br., ECF No. 14; Def.'s Br., ECF No. 15.)

## II.   ADMINISTRATIVE PROCEEDINGS

Ms. Dunn was thirty-two years old at the time of the administrative hearing and had completed two years of college, receiving her LPN nursing certificate. (R. at 41-42.) She had past relevant work as a licensed practical nurse. (R. at 31.) The ALJ applied the five-step sequential evaluation process to Ms. Dunn's claim.[2] (R. at 16.) The ALJ found that Ms. Dunn satisfied the first step because she had not engaged in substantial gainful activity. (R. at 17.) At step two, the ALJ found that Ms. Dunn suffered from the severe medical impairments of osteoarthritis, rheumatoid arthritis, and bipolar disorder. (R. at 17.) At step three, the ALJ found that Ms. Dunn did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.)

---

[2]The five part test asks whether the claimant: (1) is currently employed; (2) severely impaired; (3) has an impairment or combination of impairments that meet or approximate a listed impairment; (4) can perform past relevant work; and if not, (5) can perform any other kind of work. Through step four of this analysis, the claimant has the burden of showing that he is disabled. Only after the analysis reaches step five does the burden shift to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *Steed v. Astrue*, 524 F.3d 872, 875 n. 3 (8th Cir. 2008).

Before proceeding to step four, the ALJ found that Ms. Dunn had a residual functional capacity ("RFC") of less than the full range of sedentary work. (R. at 19.) He found that Ms. Dunn is able to "occasionally climb, balance, stoop, kneel, crouch or crawl." (R. at 19-20.) He limited Ms. Dunn to work in a setting "where interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote, few variables, little judgment and the supervision required is simple, direct and concrete." (R. at 20.) The ALJ noted that Ms. Dunn has "mild to moderate chronic pain, which is of sufficient severity as to be noticeable to her at all times . . . ." The ALJ found at step four that Ms. Dunn is unable to perform any past relevant work. (R. at 31.) At step five, the ALJ determined that jobs exist in significant numbers in the national economy that Ms. Dunn can perform, such as a factory worker, assembler, and a factory worker, sorter. (R. at 32.)

## III.   STANDARD OF REVIEW

The Court's limited function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Cox v. Apfel*, 160 F.3d 1203, 1206-07 (8th Cir. 1998) (citing *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997)). The Commissioner's decision cannot be reversed merely because substantial evidence would have supported an opposite decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). However, "[t]he substantial evidence test employed in reviewing administrative findings is more than a mere search of the record

for evidence supporting the [Commissioner's] findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). "'Substantial evidence on the record as a whole' . . . requires a more scrutinizing analysis." *Id.* (quoting *Smith v. Heckler*, 735 F.2d 312, 315 (8th Cir. 1984)). "In reviewing the administrative decision, '[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

## IV. DISCUSSION

Ms. Dunn argues that the ALJ's decision to deny her DIB is not supported by substantial evidence. (Pl.'s Br. 6, ECF No. 14.) Specifically, Ms. Dunn argues that substantial evidence does not support the ALJ's decision to discount the opinions rendered by her treating sources. (*Id.* at 9.) She claims that the ALJ's decision to discount Ms. Dunn's treating physician's opinions resulted in a flawed RFC assessment and step five determinations. (*Id.* at 6.)

A treating physician's opinion "is due 'controlling weight' if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Hogan v. Apfel*, 239 F.3d 958 (8th Cir. 2001) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000)). Treating physicians' opinions "are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (citing *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996)).

A.   PHYSICAL LIMITATIONS

Substantial evidence supports the ALJ's determination to discount the opinions of Tamer Alsebai, M.D. Dr. Alsebai determined that Ms. Dunn "could not walk even a single city block, could sit or stand for only five minutes at one time and less than two hours each in an eight-hour workday." (R. at 25.) She determined that Ms. Dunn

> must be able to shift positions at will and would need to take unscheduled breaks every hour for an hour. The claimant must elevate her feet to heart level 90% of the day in a sedentary job. The claimant did not require a cane for ambulation. The claimant could rarely lift less than ten pounds, stoop or climb stairs, could occasionally twist and could never crouch or climb ladders. The claimant would have significant limitations in doing repetitive reaching, handling or fingering and could use her hands for grasping, turning or twisting objects or the fingers for fine manipulations 25% of an eight-hour workday. The claimant would likely be absent from work more than four days per month due to her impairments or treatment.

(R. at 25.) Dr. Alsebai's objective findings "included tenderness in the hand joints, elevated sed rate and low vitamin D." (R. at 24.) Ms. Dunn's medication also "caused drowsiness, dizziness and nausea." (R. at 24.) Ms. Dunn's "depression, anxiety and personality further affected [her] physical condition." (R. at 24.)

Substantial evidence supports the ALJ's finding that Dr. Alsebai's limitations for Ms. Dunn were inconsistent with her own objective findings. The ALJ thoroughly described each of Dr. Alsebai's examinations beginning in August 2010. (R. at 22-25.) The ALJ noted, "there are no objective findings that would indicate the claimant would be as restricted as opined by Dr. Alsebai." (R. at 25.) The Court has reviewed the ALJ's findings and the examination records and holds that substantial evidence supports the ALJ's determinations that objective

evidence does not support the degree of limitations that Dr. Henderson placed on Ms. Dunn.

Substantial evidence also supports the ALJ's findings that Dr. Alsebai's limitations for Ms. Dunn were inconsistent with the record as a whole. The ALJ thoroughly described all of Ms. Dunn's medical examinations during the relevant time period. (R. at 22-25.) Ms. Dunn's symptoms improved with medication, which she took as prescribed. (R. at 22-25.) Her pain level differed during different examinations, but Ms. Dunn never used a cane, motorized cart, or other assistive device. (R. at 22-25.) Ms. Dunn consistently had full range of motion of all joints and had normal strength. (R. at 22-25.) Although Ms. Dunn is clearly in some pain, substantial evidence supports the ALJ's findings that her limitations are not as severe as Dr. Alsebai opined.

Ms. Dunn argues that "the ALJ failed to specify which parts, if any, of Dr. Alsebai's medical opinion he was crediting and to what degree." (Pl.'s Br. 13, ECF No. 14.) She argues that Dr. Alsebai's opinion "should be weighed according to the statutory factors." (*Id.*). The ALJ carefully went through each of Dr. Alsebai's examinations and used the objective findings in his RFC assessment. (R. at 20-25.) The ALJ held that he gave "little weight to the extent of limitations given by Dr. Alsebai as they are not consistent with the objective signs and throughout Dr. Alsebai's records or with the evidence as a whole." (R. at 25.) The ALJ did not commit legal error in making these determinations.

    B.    MENTAL LIMITATIONS

Substantial evidence supports the ALJ's decision to discount the opinions of Lindsey

Henderson, PsyD. Dr. Henderson determined that Ms. Dunn

> had extreme impairment in ability to get along with coworkers or peers without unduly distracting others or exhibiting behavioral extremes, marked limitations in ability to maintain regular attendance and be punctual within customary tolerances, accept instructions and respond appropriately to criticism from supervisors and deal with normal work settings, and moderate limitation in ability to complete a normal workday and workweek without interruptions from psychological based symptoms.

(R. at 28.) She also determined that Ms. Dunn "had moderate limitation in ability to deal with stress of semiskilled and skilled work." (R. at 28.) Further, she opined that Ms. Dunn "had moderate limitation in ability to interact appropriately with the general public." (R. at 28.) Dr. Henderson proffered that Ms. Dunn "had mild limitation in activities of daily living; marked limitation in maintaining social function; moderate limitation in maintaining concentration, persistence or pace and four or more episodes of decompensation within a 21 month period[], each of at least two weeks duration." (R. at 28.) Finally, Dr. Henderson believed that Ms. Dunn would "likely miss four or more days of work each month due to her impairments or treatment." (R. at 28.)

Substantial evidence supports the ALJ's findings that the limitations Dr. Henderson put on Ms. Dunn were inconsistent with her objective findings, her own treatment notes, and the record as a whole. Ms. Dunn argues that the analysis by the ALJ is "inadequate," and that the "ALJ did not specify how Dr. Henderson's treatment notes contrasted with her medical opinion." (Pl.'s Br. 15, ECF No. 14.) The ALJ discussed in detail the treatment notes from each of Dr. Henderson's examinations of Ms. Dunn. (R. at 25-28.) Dr. Henderson's treatment notes generally showed that, while Ms. Dunn's mood went up and down, she was generally

doing "pretty good," although many life events caused the mood to worsen at times. (R. at 25-28.) Ms. Dunn babysat, went to football games, and took care of her disabled son. (R. at 25-28.) In addition, the ALJ thoroughly explained how the objective evidence does not support the degree of limitations that Dr. Henderson placed on Ms. Dunn. (R. at 29-30.) The Court finds no error in the ALJ's findings.

Substantial evidence also supports the ALJ's findings that Ms. Dunn's activities of daily living are inconsistent with Dr. Henderson's opinion. Ms. Dunn argues that "[l]ongitudinally, Ms. Dunn's activities of daily living are not inconsistent with her diagnoses or the medical opinions rendered by her treating sources." (Pl.'s Br. 15, ECF No. 14.) However, the ALJ discounted Ms. Dunn's descriptions of her daily activities based on the lack of objective evidence and her mother's testimony that Ms. Dunn did most of the housework, as opposed to her disabled nine-year-old son. (R. at 30.) Ms. Dunn reported that she watches television, reads, sleeps, eats, takes care of her children–including her disabled nine-year-old son, prepares simple meals, and does laundry. (R. at 30.) She goes to church frequently. (R. at 30.) She also babysat multiple times for a few children in the neighborhood. (R. at 30.) Based on this evidence, as well as the remainder of the evidence enumerated in the ALJ's opinion, substantial evidence supports the ALJ's finding that Ms. Dunn's activities of daily living are inconsistent with Dr. Henderson's opinion.

Substantial evidence supports the ALJ's determinations that Dr. Henderson's findings were inconsistent with her objective findings, treatment notes, and the record as a whole, and that Ms. Dunn exaggerated the limitations of her activities of daily living. Therefore,

substantial evidence supports the ALJ's RFC assessment.

## V.    CONCLUSION

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record that contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record and concludes there is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error. Therefore, the final decision of the Commissioner is affirmed.

SO ORDERED this 22nd day of May, 2015.

_____
UNITED STATES MAGISTRATE JUDGE